## THE ERNEST M. MUNN.

### O'CALLAGHAN v. LOWNDES et al.

(Circuit Court of Appeals, Second Circuit. February 11, 1895.)

SALVAGE—DURESS—RESCISSION OF CONTRACT.

L.'s oyster steamer picked up a barge adrift and derelict, and towed it into port. The owner of the barge shortly after offered to settle L.'s claim for salvage for $500, which was refused. A few days later the owner came to the harbor where the barge was lying, and by threats and a display of force induced L. to agree to settle for $600, which was paid and accepted, and the barge removed by the owner. Immediately afterwards L. libeled the barge for salvage, but without mentioning in his libel the negotiations for settlement, or the receipt of the $600, or returning or offering to return the money. *Held*, that L., having failed to restore the other party to the same position in which he was before the contract, could not treat such contract as void for duress, and was entitled to no further recovery for salvage. 61 Fed. 694, reversed.

Appeal from the District Court of the United States for the District of Connecticut.

This was a libel by Stanley H. Lowndes and others against the barge Ernest M. Munn for salvage. The district court entered a decree in libelants' favor for $700 over and above $600 already received by him. 61 Fed. 694. The claimant, Walter O'Callaghan, appeals.

L. R. S. Gore, for appellant.
Howard H. Knapp, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge.   About 7:30 a. m. of November 28, 1893, the libelants' oyster steamer picked up the barge, which was then adrift and derelict, in Long Island Sound, with a cargo of coal, about a mile and a quarter from the east end of Copp Island.   The total value of the property saved was about $3,200.   The Munn was towed to libelants' home at Five Mile River, and tied up to the dock.   On the second day thereafter the claimant came to Five Mile River, and offered to give the salvors $500, and such additional sum as could be obtained from the insurance companies. They refused to settle for less than $800.   On the following Sunday the claimant returned early in the morning with a tugboat and a gang of men, with the express purpose, as the district judge finds, of obtaining possession of the barge, and a settlement of the claims for salvage, by threats and intimidation, provided he could not effect his object by other means.   A long and angry altercation ensued, accompanied by a display of force on the part of the claimant and his party.   Finally, fearing an affray in which some one might get hurt, the salvors agreed to receive $600, and to give a receipt for all claims.   The money was thereupon paid, and the barge taken by the claimant, and towed to Wilson's Point.   The libelants immediately after libeled her for salvage, and brought her back to Five Mile River.   The libel is wholly silent as to the transactions on the Sunday, and as to the payment of the $600.

There can be no doubt upon the proof that there was an agreement between the parties to accept $600 in settlement of the claim for salvage, and that such sum was thereupon paid and received. Many of the authorities cited in the opinion and upon the brief of counsel for libelants do not touch the point raised upon this appeal. They were suits brought by salvors to enforce agreements to pay them specified sums made during the existence of the sea peril.   The courts uniformly hold that, while such agreements, made in the presence of danger, may limit the salvor, they have little or no binding effect upon the other party.   The agreement in the case at bar, however, was one entered into on land, subsequent to the termination of the sea perils which are essential to a salvage service, and it must therefore be disposed of as are other similar agreements. The facts found by the district court—and the evidence sustains his finding—make out a case where the assent of one party to the agreement was enforced by the intimidation of the other.   While the decisions are not uniform, there is abundant and excellent authority for the proposition that contracts procured by threats of battery to the person or destruction of property may be avoided on the ground of duress.   Brown v. Pierce, 7 Wall. 205; Foshay v. Ferguson, 5 Hill, 158.   One who has been induced by fraud or by duress to enter into a contract may rescind it, but when the contract

has been executed by a delivery of property in accordance with its terms he can rescind only upon putting or offering to put the opposite party in as good a situation as he was before. "A party cannot rescind a contract, and yet retain any portion of the consideration. * * * [He] cannot derive any benefit from it, and yet rescind the contract. It must be nullified in toto, or not at all. It cannot be enforced in part and rescinded in part." Perley v. Balch, 23 Pick. 286. See, also, Shepherd v. Temple, 3 N. H. 457; Norton v. Young, 3 Greenl. 30; and 8 Am. & Eng. Enc. Law, p. 806. This is the difficulty with libelants' claim. The contract to settle it for $600 was not void. So long as it stood, it was a bar to any further claim for salvage. It was voidable, if he elected to avail of his right to rescind it on the ground that he entered into it under duress. But, if he did so elect, it was a condition precedent to rescission that he should restore or offer to restore the money he received under it. Libelant, however, made no such offer. He retained the $600. It is immaterial that he did not distribute it among his fellow salvors. He kept it in his own bank, subject to his own order. Had the court found that the salvage services were worth but $500, the claimant would have been put to another action to recover the balance, with but doubtful chances of success, since *he* had no right to rescind the contract under which he paid the $600. Having failed to restore the money, or even to pay it into the court for final disposition, libelant could not, while retaining it, insist that the contract under which he received it should be treated as void; and, while that contract remained in force, he was entitled to no further recovery for the salvage service; all claims therefor had been adjusted. The decree of the district court is reversed, and the cause remitted, with instructions to dismiss the libel, with costs of both courts.